JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Marjorie Evans
FCI Danbury
Rt 37
Danbury, CT  06811

### DEFENDANTS
Bill Willingham, Warden
FCI Danbury
Federal Correctional Institution
Rt 37, Danbury, CT  06811

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___Fairfield___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Fairfield___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Walter F. McKee, Esq., Lipman, Katz & McKee, PA
227 Water St., Augusta ME 04332 (207) 622-3711
Gates Garrity-Rokous, Esq., Wiggin and Dana LLP
PO Box 1832, New Haven CT 06508 (203) 498-4310

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | | | |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C Sec. 2241--Petition for Writ of Habeas Corpus

### VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ 0

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☒ NO

### VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  12/8/05

SIGNATURE OF ATTORNEY OF RECORD
Walter F. McKee  12/12/05
Gates Garrity-Rokous

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MARJORIE EVANS,                              )
                                             )
                    Petitioner,              )
                                             )
        v.                                   )    CIVIL ACTION NO.
                                             )
BILL WILLINGHAM, Warden, Federal             )
Correctional Institution—Camp Danbury,       )
Connecticut,                                 )
                                             )
                    Respondent.              )

PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2241
BY A PRISONER IN FEDERAL CUSTODY

Petitioner Marjorie Evans ("Evans") is presently serving a sentence at the Federal Correctional Institution at Danbury, Connecticut ("FPC Danbury"). Evans is petitioning this Court pursuant to 28 U.S.C. § 2241 for a Writ of Habeas Corpus because Respondent Bill Willingham, Warden ("the Warden"), is denying Evans the full amount of community confinement that Evans is entitled to at the conclusion of her sentence. Under Bureau of Prisons ("BOP"), program statements Evans is allowed to be placed at a community corrections center ("CCC") 180 days before her scheduled release from incarceration. Assuming that Evans would receive good conduct time credit ("GCT"), Evans will be 180 days from her scheduled release date on or about January 12, 2006. As such, time is of the essence. Accordingly, Evans provides the following information in support of her claims:

PARTIES

1.      Evans is presently confined at FPC Danbury which is within the jurisdiction of this Court. Evans' projected release date is July 12, 2006. Her prisoner number is 10817036.

Evans was sentenced to a term of one year and one day by United States District Court Judge Woodcock from the District of Maine on or about July 21, 2005. Evans commenced her sentence on August 30, 2005. Evans is presently 43 years old. She has been married to Kyle Evans for 20 years, and is the mother of two teenage boys. She holds a Bachelor of Science degree from Simmons College, and has lived in Maine all of her adult life. She self-surrendered to FCI Danbury on or about August 30, 2005. Evans is participating in the Puppies Behind Bars program and is tutoring inmates enrolled in the GED programs.

2.  The Warden acts under the authority of 18 U.S.C. §4042(a)(2), as the delegated authority from BOP to "provide for the safekeeping, care and subsistence" of Evans. The Warden also has the authority to approve transfers from FPC Danbury to another "appropriate and suitable place of confinement, and may choose any 'available penal or correctional facility that meets minimum standards of health and habitability...'" 18 U.S.C. §3621(b). Transfer to a CCC for the final portion of imprisonment is within the Warden's authority. See BOP Program Statement ("P.S.") 7310.04, Community Corrections Center ("CCC") Utilization and Transfer Procedures, Paragraph 12.A, at 12 (1998). The Warden is sued in his official capacity as the party responsible for the decision that is being challenged as well as in his capacity as Evans' present custodian.

## JURISDICTIONAL ALLEGATIONS

3.  This Court has jurisdiction to issue a Writ of Habeas Corpus and to grant relief as law and justice require under 28 U.S.C. §§ 1331, 2241(a), (c)(1), and 2243, because Evans is confined within the territorial jurisdiction of this Court where she is held in the Warden's custody under color of the authority of the United States.

4. This Court also has jurisdiction under 28 U.S.C. §1361 to issue relief in the nature of a Writ of Mandamus compelling the Warden in his official capacity to perform a duty owed to Evans, i.e., to refrain from denying her more than twenty-nine days' confinement at a CCC on the mistaken premise that such placement is prohibited by law.

5. Declaratory relief under 28 U.S.C. §2201 is also sought.

## FACTUAL ALLEGATIONS

6. Pursuant to a plea agreement filed in the United States District Court, District of Maine, Evans appeared before United States District Court Judge John Woodcock, Jr., on April 1, 2004, and entered a guilty plea to eight counts of the indictment pending against her, Docket No. 1: 03-CR-95-003. Evans' guilty pleas were to charges of Mail Fraud; Concealing Smuggled Items; Making False Statements; Violating the Virus Serum Toxin Act; Accessory After the Fact to Smuggling; Aiding and Abetting Mail Fraud; Making False Statements in a Matter Within the United States; and Aiding and Abetting the Violation of the Virus Serum Toxin Act. The conduct underlying the charges occurred in 1999 and 2000.

7. Evans was released on personal recognizance bail prior to sentencing. She earned one day of jail credit for her time in the United States Marshal's custody.

8. A sentencing was held on July 21, 2005. At that time, United States District Court Judge John Woodcock, Jr., sentenced Evans to imprisonment of one year and one day, to be followed by three years of supervised release and a fine in the amount of $10,000. Evans paid her $725 special assessment on April 1, 2004, and completed the payment of the fine in September 2005. Judgment was entered on July 21, 2005, and became final on August 8, 2005, when the time to file a notice of appeal expired.

9. Evans was allowed to self-surrender, and after being designated to serve her sentence at FCI Danbury, Evans did so on August 30, 2005. According to BOP's official calculation, Evans' sentence will "expire full term" on August 29, 2006. Her projected release date based on accumulated GCT under 18 U.S.C. §3624(b) is July 12, 2006. As such, the Warden has calculated Evans' "pre-release preparation date" (a/k/a "ten percent date")—the date BOP considers Evans to be eligible for placement at a CCC ([full-term, less credit for good conduct] times 0.9)—to be June 13, 2006.

10. BOP rules have long allowed for confinement in halfway houses for up to 180 days at the end of a prisoner's sentence (and sometimes longer), even if that is more than ten percent of time served. Policy Statement 7310.04. In the years prior to December 2002, the Warden and his predecessors customarily transferred FPC Danbury prisoners to halfway houses well before their "ten percent days" regardless of sentence length.

11. The recommendation of the staff at FPC Danbury with regard to the duration of Evans' pre-release halfway house opportunity is, since December 2002, constrained by a national BOP policy limiting all CCC placements, except in certain circumstances not relevant here, to the final ten percent of the time an inmate serves. Through meetings with her unit team, Evans learned that her recommended "CCC date" coincides exactly with her "ten percent date," that is, June 13, 2006.

12. Formal review of a unit team's response to a request for administrative remedy is made available through the Bureau's Three-Step Administrative Remedy Program. See 28 C.F.R. §542.10-542.15. Evans did not initiate an administrative appeal of the ten percent date announced and reiterated by her unit team, which is the only administrative remedy available,

because doing so would be futile, and was therefore unnecessary prior to seeking judicial remedy, for three reasons:

  a. Under 28 C.F.R. §542.15, the highest level of administrative appeal available is to the BOP's General Counsel. On December 20, 2002, the Bureau's General Counsel issued a "Memorandum for Chief Executive Officers" captioned "Community Confinement Procedure Changes." (Despite its title, no <u>procedures</u> are changed by this memorandum, only substantive eligibility standards.) Through this memorandum, the BOP's General Counsel declared: "Effective immediately"—and notwithstanding the BOP's longstanding, published rule as referenced in ¶12 <u>ante</u>, which was not, and has not been, withdrawn or rescinded—"[p]re-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months." Mem., at 2 (there are minor exceptions inapplicable here). This memorandum is expressly predicated upon the opinion of the Attorney General's Office of Legal Counsel. See <u>Re: Bureau of Prisons practice of placing in community confinement certain offenders who have received sentences of imprisonment</u>, December 13, 2002. There thus was and is a fixed, uniform, national policy requiring rejection of any administrative appeal that Petitioner may have filed.

  b. Numerous judges within this Circuit have invalidated the BOP's rote application of the December 20, 2002 policy and have ordered both that the BOP consider inmate halfway house eligibility pursuant to an institution's past practice and, in the guise of the warden at the Otisville Federal Prison Camp, that it release at least one inmate "forthwith" to a halfway house, that is, before said inmate's "ten percent date." In response to this in August 2004 the BOP issued new regulations that became effective on February 14, 2005 that had the practical effect of

limiting the BOP's discretion to designate inmates to CCCs the last ten percent of their sentence, not to exceed six months. 28 C.F.R. § 570.20-.21.

    c.    The Prisoner Litigation Reform Act, including its provision at 42 U.S.C. § 1997e(a) for exhaustion of administrative remedies, does not apply to federal prisoners' habeas corpus actions such as this one. Accordingly, general principles of habeas corpus law do not require that Evans exhaust administrative remedies, as none are actually available to her, nor does any statute.

13.    Evans was, therefore, not required to exhaust administrative remedies.

## CLAIMS FOR RELIEF

14.    The Warden's refusal to consider Evans for any more than 29 days' assignment to a halfway house is contrary to the laws of the United States. It is based on the BOP General Counsel's adherence to the Attorney General's erroneous reinterpretation of 18 U.S.C. §§ 3621(b) and 3624(c), which itself is expressed only in a footnote to the OLC opinion. It is also based on the categorical application of the new rule found in 28 C.F.R. § 570.20-.21.

    a.    In exercising his power to approve any transfer of Evans, the Warden is authorized to choose any "available penal or correctional facility that meets minimum standards of health and habitability…, whether maintained by the Federal Government or otherwise…" 18 U.S.C. § 3621(b).

    b.    The Warden's broad, statutory discretion over transfers of Evans and other prisoners is subject to an obligation, "to the extent practicable, to assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." 18 U.S.C. §

3624(c).  See 28 C.F.R. §§ 571.10-571.13; P.S. 5100.07, supra ch. 10, ¶2.g, at 8A; P.S. 7310.04, supra ¶12.a, at 12.

      c.      Among the penal or correctional facilities to which the Warden must consider transferring Evans for the final portion of her sentence to facilitate release, whether for the minimum period assured by 18 U.S.C. § 3624(c) or longer under 18 U.S.C. § 3621(b), is a CCC, also known as a halfway house.  P.S. 7310.04, supra ¶¶ 5, 9.a(1), at 3-4, 8.

      d.      Properly construing 18 U.S.C. §§ 3621(b) and 3624(c) in pari material and in accordance with longstanding administrative practice, the BOP's general authority to designate a place of confinement under § 3621(b) supplements the mandate of § 3624(c), which encourages pre-release preparation by assuring prisoners at least a minimum period of such preparation, "to the extent practicable."  Section 3624(c) does not refer direction to halfway houses, much less abridge their use.  (It does expand authority under § 3621(b), however, to the extent stated—to include home confinement.)  Thus, § 3624(c) does not act to restrict the general designation authority under § 3621(b) nor the Warden's long-recognized discretion, in the exercise of that authority, to approve halfway house placements commencing prior to an inmate's ten percent date and to effectuate the same.

      e.      Under an appropriate exercise of discretion, unconstrained by mistaken legal limitations, Evans would likely be approved for at or approaching 180 days' halfway house placement, prior to being allowed, during the last ten percent of her term to participate in home confinement.

      15.      The reinterpretation must not be retroactively applied to a sentence imposed upon a conviction related to an offense committed prior to December 13, 2002, as in this case.

a.  The prior, longstanding interpretation of 18 U.S.C. §§ 3621(b) and 3624(c) by the courts and the BOP itself is found in P.S. 7310.04, which allows CCC placement of "up to 180 days" (or more "with extraordinary justification") at the end of the time to be served, regardless of sentence length. P.S. 7310.04 supra ¶9.a(1), at 8.

b.  As stated in Program Statement 7310.04, after quoting the two statutes: "Therefore, the Bureau is not restricted by §3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." Id. ¶5, at 3-4.

c.  If a CCC is not a "place of imprisonment," then application of the revised interpretation would violate the Ex Post Facto Clause by substantially increasing the portion of Evans' sentence that must be served in imprisonment.

16.  More importantly, the application of the new rule in 28 C.F.R. § 570.20-.21 has the identical effect. 28 C.F.R. § 570.20-.21 provides:

> § 570.20 What is the purpose of this subpart?
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
> § 570.21 When will the Bureau designate inmates to community confinement?
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c))).

17. BOP's failure to even consider Evans eligible for CCC placement any more than 29 days before her scheduled release constitutes a renunciation by BOP of its obligation to exercise the discretion afforded it under 28 C.F.R. § 570.20-.21. BOP can not "categorically abnegate its responsibility [under 28 C.F.R. § 570.20-.21] where the enabling statute proves specific factors relevant to individualized determinations." Baker v. Ellingwood, 2005 WL 2276040 (D.Conn. 2005)(invalidating new rule); see also Pimentel v. Gonzales, 367 F.Supp.2d 365 (E.D.N.Y. 2005)(same).

## VERIFICATION

Pursuant to 28 U.S.C. § 2242, Walter F. McKee verifies, as a person acting on Evans' behalf, to wit, as Evans' counsel, that all of the factual averments of this Petition are true, either based upon Mr. McKee's personal knowledge or upon his personal examination of the pertinent files and records, and other reasonable investigation, as witnessed by his signature below.

WHEREFORE, Petitioner Evans prays that this Court:

(a) Issue a temporary restraining order, preliminary injunction, or writ in the nature of mandamus, directing the Warden to reconsider Evans for up to 180 days in a Community Corrections Center, without regard to the disputed December 2002 opinion, 28 C.F.R. § 570.20-.21 and subsequent changes in practice;

(b) Enter an order under Fed.R.Civ.P. 81(a)(2) directing the Warden to show cause before this Court within 30 days why a Writ of Habeas Corpus should not be issued invalidating the Warden's decision;

(c) After full consideration on the merits, including such discovery and/or hearing as the Court may deem appropriate, issue the writ of habeas corpus or an order in the nature of mandamus, declaring the proper construction of 18 U.S.C. §§ 3621(b) and 3624(c) to be as

heretofore understood and directing the Warden not to rely upon the erroneous December 2002 opinion of the Attorney General's Office of Legal Counsel (or any BOP action or directive based thereon) when selecting the appropriate portion of Evans' sentence that she may serve in community confinement, and not relying on the automatic exclusion of Petitioner based on an application of 28 C.F.R. § 570.20-.21, relying instead on an actual consideration of Petitioner for CCC placement as allowed under sections 3621(b) and 3624 (c) and FPC Danbury's past practices; and

(d)     Grant such other or further relief pursuant to 28 U.S.C. § 2243 as law and justice require.

Dated: *December 8*, 2005

Respectfully submitted,
THE PETITIONER

By: Walter F. McKee, Esq.
Lipman, Katz & McKee, P.A.
P.O. Box 1051
Augusta, ME 04332-1051
(207) 622-3711
Fax: (207) 622-7415
wmckee@lipmankatzmckee.com

*12/12/05*

By: Gates Garrity-Rokous
Wiggin and Dana LLP
One Century Tower
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
203-498-4310
203-782-2889 (fax)
E-mail: ggr@wiggin.com
LOCAL COUNSEL