UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARJORIE EVANS,<br>     Petitioner,<br><br>v.<br><br>BILL WILLINGHAM, Warden, Federal<br>Correctional Institution – Camp Danbury,<br>Connecticut,<br>     Respondent. | Civil Action No.<br>3:05cv1904 (SRU) |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Marjorie Evans, an inmate at the Federal Correctional Institution in Danbury, Connecticut, has petitioned the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In principal, she seeks – not release from custody – but an order, directing the warden to consider her for transfer to a Community Corrections Center ("CCC"), and enjoining the Bureau of Prisons ("BOP") from applying 28 C.F.R. § 570.20-.21.  That rule, promulgated in 2005, excludes from consideration for transfers to CCC's any prisoner with more than ten-percent or six months of her sentence remaining.  Because the BOP rule is an invalid interpretation of the BOP's authorizing statute, 18 U.S.C. § 3621(b), I grant Evans' petition.[1]

---

[1] The Respondent has not challenged that Evans properly filed her suit as a habeas petition pursuant to 28 U.S.C. § 2241.  A petitioner seeking habeas relief under section 2241 is normally required to first exhaust administrative remedies.  *See, e.g.*, *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).  Where, as here, exhaustion would be futile, it is appropriate to waive that prudential requirement.  *See, e.g.*, *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005).  Although Evans has not exhausted her remedies with the BOP, such an attempt would be futile.  I, therefore, excuse that failure.

**I.      Discussion**

    A.    <u>Relevant Statutes and BOP Policies</u>

        1.    *18 U.S.C. § 3621(b)*

Under 18 U.S.C. § 3621(b), the BOP is vested with the authority to designate a prisoner's place of imprisonment. That section provides:

> **(b) Place of imprisonment.** The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering–
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence–
>
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>     (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). The section also provides that the BOP "may at any time, having regard for *the same matters*, direct the transfer of a prisoner from one penal or correctional facility to another." *Id.* (emphasis added).

  2. *18 U.S.C. § 3624(c)*

A separate provision addresses the release of prisoners and the BOP's obligation to ease a prisoner's transition back into the community. 18 U.S.C. § 3624(c) provides:

> **(c) Pre-release custody.** The Bureau of Prisons shall, to the extent practicable, assure [*sic*] that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

  3. *BOP Practices and Regulations*

Prior to December 2002, the BOP regularly placed prisoners in CCC's for up to six months. *See United States v. Serpa*, 251 F. Supp. 2d 988, 990 (D. Mass. 2003) (noting that practice was "entirely routine and all but taken for granted by all the participants"). On December 13, 2002, the Department of Justice Office of Legal Counsel ("OLC") issued a memorandum, concluding that the BOP did not have "general authority" under section 3621 to place inmates in CCC's at the outset of their sentence or at any time the BOP chooses. The OLC memorandum reasoned that the authority to place a prisoner in a CCC was derived solely from section 3624(c).[2] The BOP followed the OLC's advice to limit residence in a CCC to the last six months of a prisoner's sentence or to the last ten-percent of the sentence, whichever is shorter.

The legality of the 2002 policy was frequently challenged. The two Courts of Appeals that considered the issue both concluded that the 2002 policy was unlawful because it did not

---

[2] In the present litigation, the Respondent has not maintained that his authority to transfer a prisoner to a CCC is derived exclusively from section 3624(c).

recognize the BOP's discretion to transfer an inmate to a CCC at any time and was therefore contrary to the plain meaning of section 3621. *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004). In the Second Circuit, several district courts also invalidated the 2002 policy. *See, e.g.*, *United States v. Mestel*, 2004 WL 2472273 (D. Conn. Nov. 2, 2004). *But see Skelskey v. Deboo*, 332 F. Supp. 2d 485 (D. Conn. 2004).

In response to court rulings such as *Elwood* and *Goldings*, in 2004 the BOP proposed new regulations. 69 Fed. Reg. 51,213 (Aug. 18, 2004). After a period for submission of comments, the proposed regulations were published in January 2005 and became effective on February 14, 2005. *See* 28 C.F.R. §§ 570.20-21. Unlike the 2002 policy, the 2005 regulation recognizes that the BOP has authority under section 3621 to place an inmate in a CCC at any time, but the regulation represents a "categorical exercise of discretion for designating inmates to community confinement." 28 C.F.R. § 570.20(a). Pursuant to the 2005 rule, the BOP will designate inmates to CCC's (subject to certain exceptions not relevant to the instant suit) "only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C.F.R. § 570.21(a).

In the last year, the validity of the 2005 regulations has also been litigated. One Court of Appeals has considered the rule and rejected it as unlawful. *See Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005). District courts in the Second Circuit have been divided on the issue. *Compare, e.g.*, *Baker v. Willingham*, 2005 WL 2276040 (D. Conn. Sept. 16, 2005) (invaliding the new rule); *Pimentel*, 367 F. Supp. 2d 365 (same) *with, e.g.*, *Moss v. Apker*, 376 F. Supp. 2d 416 (S.D.N.Y. 2005) (upholding the new rule); *Yip v. Federal Bureau of Prisons*, 363 F. Supp. 2d 548 (E.D.N.Y. 2005) (same).

B.  The BOP Regulation is an Unlawful Interpretation of Section 3621(c)

The 2005 rule is a categorical exercise of discretion for designating or transferring inmates to CCC's. Because 18 U.S.C. § 3621(c) requires the BOP to consider certain, individualized factors before determining a prisoner's placement or potential transfer, the BOP's categorical rule is unlawful. *See Woodall*, 432 F.3d at 244 ("The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in section 3621(b) for making placement and transfer determinations.").

1.  *BOP's Consideration of Section 3621(b) Factors is Mandatory*

The Respondent contends that factors listed in section 3621(b) are not mandatory. The BOP points to the use of the word "may" in the second sentence of section 3621(b), to argue that the agency is not required to consider the factors when making placement or transfer decisions.

The BOP's position is contrary to the plain language of the text; its focus on the word "may" in isolation is not faithful to the statutory context. *See Deal v. United States*, 508 U.S. 129, 132 (1993) (noting the "fundamental principle of statutory construction . . . that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"). Although the BOP "may" place a prisoner in any available facility that meets minimum standards and that the BOP considers appropriate, it may do so only *after considering* the five factors listed in section 3621(b). *See Woodall*, 432 F.3d at 245-46 (rejecting BOP's argument after considering the plain meaning of the text as well as the statute's legislative history and holding that the BOP must consider all of the listed factors in making placement and transfer decisions).

    2.  *The BOP Categorical Rule By Definition Fails to Account for 3621(b) Factors*

In promulgating the 2005 rule, the BOP purported to consider the 3621(b) factors: "In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors . . . ." 69 Fed. Reg. 51,214 (Aug. 18 2004).

Four of those five factors can only be applied with reference to an individual prisoner: the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence. 18 U.S.C. § 3621(b)(1)-(4). The BOP cannot consider those factors – as section 3621(b) requires it to do – with a categorical rule prohibiting the BOP from considering an inmate for CCC placement based on the length of her remaining sentence.[3]

  C.  <u>Section 3624(c) Does Not Affect BOP's Duties Under Section 3621(b)</u>

To the extent that the BOP argues that section 3624(c) limits its authority under 3621(b), I reject that argument. Section 3624 addresses the release of prisoners and imposes an additional obligation on the BOP to ensure appropriate pre-release conditions in preparation for re-entry into the community "to the extent practicable." 18 U.S.C. § 3624(c). That duty is imposed on the BOP only during the last ten percent of a prisoner's sentence, not to exceed six months. *Id.* In other words, during the pre-release period (*i.e.*, the last ten percent of the sentence, but no longer than six months), the BOP must provide conditions, such as those available at a CCC or

---

[3] When questioned at oral argument, the Respondent acknowledged that the BOP could not have considered any of the first four section 3621(b) factors in exercising its discretion categorically.

like facility, that will assist the prisoner's transition out of custody.

Nothing in section 3624(c), however, limits the BOP's authority to transfer prisoners to "any available penal or correctional facility" prior to the pre-release period or limits the BOP's obligation to consider the five factors of section 3621(b) when making placement or transfer decisions. *See Woodall*, 432 F.3d at 250 (rejecting notion that section 3624(c)'s obligation regarding CCC or similar placements during pre-release overrides BOP's duty to consider 3621(b) factors prior to pre-release period). Here, the Respondent has conceded that a CCC is a correctional facility. Thus, transfer to a CCC is authorized by section 3621(b) at any time during an inmate's sentence.

### D. *Chevron* Analysis

The BOP also argues that the agency's interpretation of section 3621(b) should be granted deference under the principles of *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984). A two-step inquiry guides whether an agency's interpretation of a statute it administers is subject to *Chevron* deference:

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-43 (footnotes omitted).

As noted above, the BOP's interpretation of section 3621(b) is contrary to the plain

language of section 3621(b), *i.e.*, that the agency consider the enumerated factors before making placement and transfer determinations.  The BOP regulation, which provides that the agency may not consider those factors in full, fails to give effect to the "unambiguously expressed intent of Congress,"*id.* at 843, and thus is not entitled to deference under *Chevron*.  *See Woodall*, 432 F.3d at 249.

     E.    <u>Remedy</u>

Evans has asked the court to order the BOP to consider her for CCC placement immediately.  Although section 3621(b) does not set forth requirements concerning *when* the BOP must consider transfers, prior to the implementation of the 2002 policy and 2005 rule, inmates were referred to CCC's for up to 180 days before release from custody.  Program Statement 7310.01 at 8 (Dec. 16, 1998), Ex. A to Decl. of Patrick W. Ward (doc. # 12), *available at* http://www.bop.gov/policy/index.jsp.

When considering the remedy available for an inmate challenging the 2005 rule, courts have ordered the BOP to immediately consider the inmate for transfer to a CCC in good faith and without reference to the 2002 and 2005 policies.  *See, e.g.*, *Woodall*, 432 F.3d at 251; *Baker*, 2005 WL 2276040 at *7.

Although the BOP is not required to consider an inmate transfer at any particular time – other than its duty to provide appropriate pre-release conditions pursuant to section 3624(c) – it may not rely on its invalid regulations for guidance.  Accordingly, I hereby order the Respondent to consider Evans' request for transfer to a CCC in good faith and without regard to the 2005 rule or 2002 policy.  Because the full-term of Evans' sentence will expire on August 29, 2006, time is of the essence, and the Respondent is ordered to consider Evans' request for transfer within ten

days.

Evans' petition (doc. # 1) is GRANTED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 2d day of February 2006.

          /s/ Stefan R. Underhill
            Stefan R. Underhill
            United States District Judge