# LIPMAN, KATZ & MCKEE, P.A.
## ATTORNEYS AT LAW

SUMNER H. LIPMAN
DAVID M. LIPMAN
ROGER J. KATZ
ROBERT J. STOLT
KEITH R. VARNER

WALTER F. MCKEE
KAREN E. (LIPMAN) BOSTON
TRACIE L. ADAMSON
BENJAMIN J. SMITH

227 WATER STREET, P.O. BOX 1051
AUGUSTA, MAINE 04332-1051
207-622-3711 / 800-660-3713
FAX: 207-622-7415
WWW.LIPMANKATZMCKEE.COM

January 30, 2006

**VIA FACSIMILE (203-773-2334) AND FEDERAL EXPRESS**

Office of the Clerk
United States District Court
District of Connecticut
141 Church Street
New Haven, CT.  06510

     RE:    Evans v. Willingham
           3:05-cv-01904-SRU

Dear Sir or Madam:

    At the oral argument on Friday, January 27, 2006, Judge Underhill indicated that if we were able to locate the policy that dealt with the timing of the determination of transfer to a community correction center, that we should provide it to the Court.   I located that policy over the weekend on the Bureau of Prisons' website.  The policy can be located on the internet at the following address:  http://www.bop.gov/DataSource/execute/dsPolicyLoc.  The specific policy is found in the 7000 Series, Number 7310.04.  In paragraph 12 there is reference to the timing of the determination and it indicates that the initial determination of transfer to a community corrections center should be made "11 to 13 months" prior to the release date.

    I am faxing along a copy of this letter to Alan Soloway.  I have printed off the policy and I will send it via federal express to the Court today.

    If you have any questions, please feel free to call.

                    Sincerely,

                    Walter F. McKee
                    *wmckee@lipmankatzmckee.com*

WFM/rp
enclosure
cc:    Alan Soloway, Esq.
       E. Gates Garrity-Rokous, Esq.



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE AFFECTED:** 7310.04
**CHANGE NOTICE NUMBER:** 7310.04
**DATE:** 12/16/98

1.  <u>PURPOSE AND SCOPE</u>.  To reissue the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedures**.

2.  <u>SUMMARY OF CHANGES</u>.  This reissuance incorporates text consistent with the recently issued Program Statement on Categorization of Offenses.  In addition, text and procedural improvements recommended by field and Regional Office staff have also been incorporated.  These changes are summarized below:

- Incorporates recommendations made by the Mothers and Infants Together (MINT) workgroup;
- Allows inmates who are otherwise eligible for camp placement to be transferred to a camp prior to transfer to a CCC; and,
- Eliminates the possibility of "stacking" time in a halfway house by combining Bureau referral placement with public law or supervised release placement.

3.  <u>ACTION</u>.  File this Change Notice in front of the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedure**.

/s/
Kathleen Hawk Sawyer
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

OPI: CPD
NUMBER: 7310.04
DATE: 12/16/98
SUBJECT: Community Corrections Center (CCC) Utilization and Transfer Procedure

1. <u>PURPOSE AND SCOPE</u>.  To provide guidelines to staff regarding the effective use of Community Corrections Centers (CCCs).  This Program Statement defines placement criteria for offenders, requires that staff members start the placement process in a timely manner, and defines the circumstances when inmates may refuse Community Corrections (CC) programs.  It also establishes an operational philosophy for CCC referrals that, whenever possible, eligible inmates are to be released to the community through a CCC unless there is some impediment as outlined herein.

CCCs provide an excellent transitional environment for inmates nearing the end of their sentences.  The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills.

One reason for referring an inmate to a CCC is to increase public protection by aiding the transition of the offender into the community.  Participating in community-based transitional services may reduce the likelihood of an inmate with limited resources from recidivating, whereas an inmate who is released directly from the institution to the community may return to a criminal lifestyle.  While clearly dangerous inmates should be separated from the community until completing their sentences, other eligible inmates should generally be referred to CCCs to maximize the chances of successful reintegration into society.

Finally, the scope of this Program Statement has been extended to include CCC consideration/placement of District of Columbia Department of Corrections inmates.

2.  PROGRAM OBJECTIVES.  The expected results of this program are:

   a.  All eligible inmates will have opportunities to participate in CCC programs to assist with their reintegration into the community, in accordance with their release needs.

   b.  All inmates will have opportunities to communicate directly with staff who make significant CCC referral recommendations.

   c.  Referral packets for CCC placement will be timely and complete.

   d.  Before any inmate is transferred to a CCC, the CCC staff will have the required notice and other documentation.

   e.  The public will be protected from undue risk.

3.  DIRECTIVES AFFECTED

   a.  Directive Rescinded

      PS 7310.03    Community Corrections Center (CCC)
                    Utilization and Transfer Procedures (3/25/96)

   b.  Directives Referenced

      PS 1434.06    Jurisdiction on Escape Related Issues -
                    Memorandum of Understanding USMS/FBI/BOP
                    (7/25/94)
      PS 1490.04    Victim and Witness Notification (2/3/98)
      PS 5100.06    Security Designation and Custody
                    Classification Manual (6/7/96)
      PS 5110.12    Notifications of Release to State and Local
                    Law Enforcement Officials (1/21/98)
      PS 5180.04    Central Inmate Monitoring System (8/16/96)
      PS 5250.01    Public Works and Community Service Projects
                    (1/19/93)
      PS 5264.06    Telephone Regulations for Inmates (12/22/95)
      PS 5280.08    Furloughs (2/4/98)
      PS 5322.10    Classification and Program Review of Inmates
                    (9/4/96)
      PS 5325.05    Release Preparation Program, Institution
                    (7/18/96)
      PS 5330.10    Drug Abuse Programs Manual, Inmate (5/25/95)
      PS 5380.05    Financial Responsibility Program, Inmate
                    (12/22/95)

PS 7310.04
12/16/98
Page 3

| PS 5550.05 | Escape from Extended Limits of Confinement (3/27/96) |
| PS 5553.05 | Escapes/Deaths Notification (9/17/97) |
| PS 5800.07 | Inmate Systems Management Manual (12/24/91) |
| PS 5800.11 | Central File, Privacy Folder, and Parole Mini File (9/7/97) |
| PS 5873.05 | Release Gratuities, Transportation, and Clothing (9/4/96) |
| PS 5882.03 | Fines and Costs (2/4/98) |
| PS 6000.05 | Health Services Manual (9/15/96) |
| PS 6070.05 | Birth Control, Pregnancy, Child Placement, and Abortion (8/9/96) |
| PS 7300.09 | Community Corrections Manual (1/12/98) |
| PS 7320.01 | Home Confinement (9/6/95) |
| PS 7331.03 | Pretrial Inmates (11/22/94) |
| PS 7430.01 | Community Transitional Drug Treatment Services, Inmate (1/20/95) |

18 U.S.C. § 3621(b)
18 U.S.C. § 3624(c)

4. STANDARDS REFERENCED

a. American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4265, 3-4343, 3-4343-1, 3-4387, 3-4388, 3-4388-2, 3-4389, 3-4391, 3-4393, 3-4393-1

b. American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3E-04, 3-ALDF-4E-19, 3-ALDF-4E-19-1, 3-ALDF-4F-04, 3-ALDF-4F-05, 3-ALDF-4F-07, 3-ALDF-4G-01, 3-ALDF-4G-06, 3-ALDF-4G-07

c. American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies: 2-CO-4G-01, 2-CO-4G-02

d. American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-3D-04, 1-ABC-4E-20, 1-ABC-4F-08, 1-ABC-4F-10, 1-ABC-4G-01, 1-ABC-4G-02, 1-ABC-4G-03, 1-ABC-4G-06

5. STATUTORY AUTHORITY. 18 U.S.C. § 3624(c), provides:

"The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust

to and prepare for the prisoner's reentry into the
community.  The authority provided by this subsection may be
used to place a prisoner in home confinement.  The United
States Probation Office shall, to the extent practicable,
offer assistance to a prisoner during such pre-release
custody."

18 U.S.C. § 3621(b) provides:

"The Bureau of Prisons shall designate the place of the
prisoner's imprisonment.  The Bureau may designate any
available penal or correctional facility . . . the Bureau
determines to be appropriate and suitable."  A CCC meets the
definition of a "penal or correctional facility."

Therefore, the Bureau is not restricted by § 3624(c) in
designating a CCC for an inmate and may place an inmate in a CCC
for more than the "last ten per centum of the term," or more than
six months, if appropriate.

Section 3624(c), however, does restrict the Bureau in placing
inmates on home confinement to the last six months or 10% of the
sentence, whichever is less.

6.   <u>PRETRIAL/HOLDOVER AND/OR DETAINEE INMATES</u>.  This Program
Statement does not apply to pretrial, holdover, or detainee
inmates.

7.   <u>COMMUNITY-BASED PROGRAMS</u>

   a.   <u>Community Corrections Centers (CCC)</u>.  CCCs, commonly
referred to as "halfway houses," provide suitable residence,
structured programs, job placement, and counseling, while the
inmates' activities are closely monitored.  All CCCs offer drug
testing and counseling for alcohol and drug-related problems.
During their stay, inmates are required to pay a subsistence
charge to help defray the cost of their confinement; this charge
is 25% of their gross income, not to exceed the average daily
cost of their CCC placements.  Failure to make subsistence
payments may result in disciplinary action.

   These contract facilities, located throughout the United
States, provide two program components:  the Community
Corrections Component and the Prerelease Component:

   (1)  The <u>Community Corrections Component</u> is designed as the
most restrictive option.  Except for employment and other
structured program activities, an inmate in this component is

PS 7310.04
12/16/98
Page 5

restricted to the CCC.  An inmate shall ordinarily be placed in the Community Corrections Component upon arrival at the CCC.

This orientation period normally lasts for two weeks or until the inmate has demonstrated to CCC staff the responsibility necessary to function in the community.  Based on their professional judgment, CCC staff shall determine when an inmate is prepared to advance to the Prerelease Component.

(2)  The Prerelease Component is designed to assist inmates making the transition from an institution setting to the community.  These inmates have more access to the community and family members through weekend and evening passes.

b.  Community Corrections Programs.  In addition to a CCC's traditional services, the Bureau also has the following community-based programs.  Referral procedures may be described in independent Bureau directives issuances.  The Community Corrections Manager (CCM) reviews the inmate's characteristics and the recommendations noted in the referral package to determine if one of the following programs (if available) may be more appropriate than traditional CCC placement.

(1)  Comprehensive Sanctions Center (CSC).  The CSC concept, initiated by the Bureau, with the extensive cooperation and teamwork of U.S. Probation and CCC contractors, was developed to provide courts with a wider range of sentencing options and to facilitate the development and implementation of community program plans tailored to the individual needs of prerelease inmates.

The CSC is designed to meet the needs of higher risk prerelease inmates and consists of six different levels of supervision, ranging from 24-hour confinement to Home Confinement.

It also may have an intensive treatment component consisting of substance abuse education and treatment, life skills training, mental health counseling, education, employment assistance, and mentoring.  The inmate's progress is systematically reviewed by a Program Review Team (PRT), consisting of representatives from the Bureau, U.S. Probation, and the CCC.

(2)  Mothers and Infants Together (MINT).  MINT is an alternative residential program that promotes bonding and parenting skills for low risk female inmates who are pregnant. The inmate is placed in the program two months prior to delivery and remains there for three months after delivery.

(3)  Home Confinement.  Home Confinement is a generic term used to cover all circumstances in which an inmate is required to remain at home during non-working hours of the day.  Electronic

monitoring equipment is sometimes used to monitor compliance with the program's conditions.  These programs provide an opportunity for inmates to assume increasing levels of responsibility, while, at the same time, providing sufficient restrictions to promote community safety and convey the sanctioning value of the sentence.

Home Confinement provides an option for inmates who do not need the structure of a residential facility.  Except for inmates who are initially sentenced to and graduate from the Intensive Confinement Center Program, statutory provisions limit the length of Home Confinement to the last 10% of the sentence, or six months, whichever is less.  Inmates are required to pay subsistence of 25% of their gross income to defray the costs of Home Confinement and electronic monitoring.

The Bureau is involved in two Home Confinement programs: Home Confinement operates from the Bureau's own network of CCCs and the U.S. Probation Division program.

(a)  CCC Contractors.  The first form of Home Confinement is CCC contractor-operated programs.  In these programs, CCC staff monitor the inmate.  Currently, only a few of these programs use electronic monitoring equipment.  Supervision is provided by daily telephone contacts and periodic personal contacts in the home and workplace.

(b)  U.S. Probation Office.  The second form of Home Confinement involves placing federal inmates in programs operated by the U.S. Probation Office.  These programs use electronic monitoring equipment with U.S. Probation Officers (USPO) providing supervision.

(4)  Transitional Services Program (TSP).  The community-based transition phase of the Bureau's Residential Drug Treatment Program is designed to complement the accomplishments and continue the institutional program's treatment plan.  It reinforces the inmate's personal responsibility to lead a drug-free lifestyle through personal accountability for choices, confrontation of negative thinking patterns, and instruction in basic social skills.  Inmates who successfully complete the Residential Drug Treatment Program's institutional phase should normally be considered for the maximum 180 day period of CCC placement, if they are otherwise eligible.

    (5)  <u>Intensive Confinement Center (ICC)</u>.  A lengthy period
of Community Corrections Center confinement follows the
completion of the ICC program's institutional phase.  The CCC
time is divided among the restrictive Community Corrections
Component, the Prerelease Component, and Home Confinement.
Specific referral procedures are outlined in the ICC Program
Statement.

8.  <u>RELEASE PLAN</u>.  Staff shall begin release planning at an
inmate's first team meeting, normally the initial classification,
and shall continue throughout the inmate's confinement.  The
following guidelines apply:

    a.  Planning early in an inmate's period of confinement is
necessary to ensure release preparation needs are identified and
appropriate release preparation programs are recommended.

    b.  Preliminary decisions regarding eligibility for CC Programs
are to be made well in advance of the last year of confinement.

    c.  A final and specific release preparation plan, including a
decision as to CCC referral, is normally established at a team
meeting no later than 11 to 13 months before an inmate's
projected release date.

9.  <u>CCC CRITERIA AND REFERRAL GUIDELINES</u>

    a.  <u>Regular Referrals</u>.  Staff shall make recommendations for
CCC placements based on assessments of inmate needs for services,
public safety, and the necessity of the Bureau to manage its
inmate population responsibly.  CCCs are a program element and
are not to be used as a reward for good institutional behavior,
although an inmate's institutional adjustment may be a factor in
making a referral determination.

    A number of factors must be weighed to determine the length of
CCC placement for inmates, including their individual needs and
existing community resources.  Ordinarily, inmates with shorter
sentences do not require maximum CCC placement due to reduced
transition needs.  Additionally, inmates who are required to
spend a portion of time in a CCC as a condition of release (i.e.
supervised release or court order) do not require an extended
Bureau CCC placement.  For example, if the Unit Team determines
the inmate needs a six month CCC placement, but the inmate is
required to stay in a CCC for 90 days as a condition of release,
then the institution shall ordinarily refer the inmate for a 60-
90 day CCC placement.

**Referrals to CCM offices should include a recommendation regarding the length of stay (range), such as recommending 60 to 90 days or 90 to 120 days, etc. This range of at least 30 days allows the CCM to match population needs with budgetary and CCC bed space resources, a process which requires this flexibility.**

However, there will be cases when the institution, for various management reasons, wants the CCM to place the inmate not earlier than a specific date. Then, the CCC referral form should specify a recommended placement date rather than a range and further state that the CCM should not adjust that date. The CCM shall adhere to the recommended date, with any adjustment only being downward if budget and/or bed space constraints are a factor.

The following CCC referral guidelines apply:

(1)   An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

(2)   The ultimate goal is to maximize each eligible inmate's chances for successful release and a law-abiding life.

(3)   When an inmate has a history of escape or failure in one or more CC Programs, careful review and consideration should be given regarding the suitability of participation and the length of placement.

(4)   Inmates with minor medical conditions or disabilities may also be considered for community placement. Inmates are required to assume financial responsibility for their health care while assigned to community programs. Such inmates must provide sufficient evidence to institution staff of their ability to pay for health care while at a CCC prior to the referral being made. When an inmate is unable or unwilling to bear the cost of necessary health care, the inmate shall be denied placement.

(5)   Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement shall be transferred to a camp for intermediate placement. The inmate should have completed the Institution Release Preparation Program at the parent institution. The parent institution shall complete the CCC referral packet and the camp should be closer to the inmate's release residence. This process should be completed to allow the

inmate a minimum of a 60 day placement at the camp prior to the acceptance date at the CCC.

b.  <u>MINT Referrals</u>.  Female inmates are eligible to enter the program at the CCC generally during their last two months of pregnancy.  After birth, the mother is allowed three additional months to bond with the child.  The mother shall then be returned to an institution to complete her sentence.  If she is eligible for prerelease services, she may remain at that facility only if she is going to be supervised in that judicial district.

The CEO may approve early or extended placements with a recommendation by the treating obstetrician and Clinical Director's concurrence.  A placement extending beyond 180 days requires the Regional Director's approval.  Direct court commitments shall have a secondary designation noted on the Inmate Load and Security/Designation form (BP-337).  This shall be used to determine the institution responsible for the inmate's medical expenses while she is confined in the MINT Program.

Authority to pay immediate post-natal care of the child born to an inmate while in custody is derived from administrative discretion when the Bureau finds itself responsible for the cost by default (no other resources can be compelled to pay).  It is reasonable that the Bureau provides for the child's medical expenses for the first three days after routine vaginal birth or up to seven days for a Cesarean section.

Prior to the birth, the mother must make arrangements for a custodian to take care of the child.  At this time, the CEO shall ensure the person or agency taking custody of the child is also asked to be responsible for medical care costs beyond three days after birth.  (<u>Note</u>:  This may be extended by the Regional Director for an additional seven days for extenuating circumstances on a case-by-case basis.)  The person(s) receiving custody of the child should sign a Statement of Responsibility for medical care costs, clearly indicating that the signing party accepts financial responsibility.  Unit Management staff are responsible for obtaining this statement, and forwarding copies to the Health Services Administrator (HSA) for placement in the HSA's outside hospitalization file and to the Controller (see the Sample Statement of Responsibility (Attachment D)).

Health Services staff shall confirm an inmate's pregnancy and evaluate her medical condition.  Health Services staff shall indicate whether CCC placement is medically appropriate and document this on the Medical Evaluation for Transfer of Inmates to CCC Type Facility (BP-351) which shall be forwarded to the Unit Team.

When the Unit Team has concerns regarding the appropriateness of a CCC placement (such as criminal history, severity of current

offense), procedures will be followed according to Section
10.i.(2), Limitations on Eligibility for All CCC Referrals.

The following CCC referral guidelines apply in addition to the
guidelines provided for regular referrals:

(1)  The inmate must be pregnant upon commitment with an
expected delivery date prior to release.

(2)  The inmate or guardian must assume financial
responsibility for the child's care, medical and support, while
residing at the CCC.  Should the inmate or the guardian be unable
or unwilling to bear the child's financial cost, the inmate may
be transferred back to her parent institution.

(3)  An inmate who becomes pregnant while on furlough, or
has more than five years remaining to serve on her sentence(s),
or plans to place her baby up for adoption shall not be referred
for MINT placement.

**Referrals to CCMs should state a specific date of placement.
This date should be approximately two months prior to the
inmate's expected delivery date.**

The CCC's Terminal Report should fully describe the inmate's
experience in, and reaction to, the MINT Program.  It should also
summarize counseling received in the program and include follow-
up medical or program recommendations for the institution to
facilitate the inmate's transition.

Inmates in need of foster care placement assistance shall be
referred to the institution social worker, or if the institution
does not have a social worker, staff shall contact a social
worker in the community for foster care placement assistance.

10.  <u>LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS</u>.  Inmates
in the following categories shall not ordinarily participate in
CCC programs:

a.  Inmates who are assigned a "Sex Offender" Public Safety
Factor.

b.  Inmates who are assigned a "Deportable Alien" Public Safety
Factor.

c.  Inmates who require inpatient medical, psychological, or
psychiatric treatment.

d.   Inmates who refuse to participate in the Inmate Financial Responsibility Program.

e.   Inmates who refuse to participate, withdraw, are expelled, or otherwise fail to meet attendance and examination requirements in a required Drug Abuse Education Course.

f.   Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.

g.   Ordinarily, inmates serving sentences of six months or less.

h.   Inmates who refuse to participate in the Institution Release Preparation Program.

i.   Inmates who pose a significant threat to the community. These are inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community.

Examples are inmates with repeated, serious institution rule violations, a history of repetitive violence, escape, or association with violent or terrorist organizations.

To determine whether an inmate poses a significant threat, a number of factors must be considered. The key consideration is public safety when assessing the inmate's proclivity for violence or escape against their placement needs.

A waiver of the Public Safety Factor is not required for inmates transferred via unescorted transfer to CCC placements.

Ordinarily, inmates with a single incident of violence should not automatically be excluded from CCC placement. As noted earlier, clearly dangerous inmates should be excluded from CCC placement.

(1)   When there exists a basis for significant doubt regarding whether the inmate currently poses a threat to the community, the Warden should consider contacting the Chief USPO in the release district (see the Sample letter (Attachment A)) to seek guidance on the referral's appropriateness. A copy of this letter shall be maintained in the Inmate Central File.

(2)   When an inmate is excluded under this subsection, a memorandum, signed by the Warden, shall be prepared and placed in the Inmate Central File to explain the rationale for exclusion from CC Programs.

j.   Inmates whose admission and release status is pretrial, holdover, or detainee.

11.  <u>REFUSALS</u>.  When an eligible inmate refuses CCC placement, staff shall investigate the inmate's reasons.  Staff may honor an inmate's refusal of CCC placement.

Suitable reasons to decline placement might include previous CCC failure, potential conflict with other residents, and location or remoteness from release residence.  When the inmate does not present a suitable reason, and the unit team believes that a placement would serve a correctional need, the unit team shall make every effort to encourage participation.

When an inmate refuses placement, a memorandum, signed by the Associate Warden (Programs) and the inmate, shall be placed in the Inmate Central File.  The memorandum should document the inmate's rationale for refusal and all unit team effort to encourage participation.

12.  <u>CCC REFERRAL PROCEDURES</u>.  Normally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community Corrections program.

Medical staff shall notify the inmate's Case Manager promptly when a pregnancy is verified.  Upon notification, the unit team shall decide if a MINT referral to a Community Corrections program will be made.

a.  <u>Referral to CCM</u>.  Staff shall use the Institution Referral form (BP-210) (Attachment B) when referring an inmate for transfer to a CCC.  Information included in the Additional Information (11) and Specific Release Preparation Needs (12) sections must be as specific as possible regarding the inmate's needs.

Attachment B contains instructions for completing the Institution Referral form and related materials.  Signed copies of the "Community Based Program Agreement" must be included with all CCC referrals.  The Warden is the final decision-making authority for all CCC referrals the unit team recommends.

If the Warden approves the CCC referral, the unit team shall forward two copies of the Institutional Referral form and appropriate attachments to the CCM.  Staff shall enter the DST SENTRY assignment of "W CCC ACT."  Copies of appropriate documents are prepared so that one may be forwarded to the CCC while the CCM retains the other for reference.

A separate packet with appropriate copies shall be forwarded to the Transitional Services Manager (TSM) in the **receiving region where the inmate is being released** for graduates of Residential Drug Abuse Programs.  Staff are referred to the Drug Abuse Programs Manual for responsibilities and/or documentation requirements.  If the CCC referral packet is mailed prior to

completion of the Treatment Summary and Referral form (BP-549), the Drug Abuse Treatment Coordinator shall forward the completed BP-549 form to the Transitional Services Manager in the region of the inmate's release and provide a copy to the unit team.

The referral packet shall be forwarded to the CCM at least 60 days prior to the maximum recommended range or date.  However, additional time may be required for processing inmates with special community-based program needs (i.e. mental health, drug transition, disabilities, and inmates with higher security needs).

For MINT referrals, the referral packet shall ordinarily be forwarded to the CCM at least 60 days prior to the recommended date.  If the inmate is committed to Bureau custody or arrives at the designated facility at any stage during the second trimester of pregnancy, the referral shall be forwarded to the CCM as quickly as possible.

If an inmate is scheduled for release via parole, and CCC placement is for 45 days or less, a copy of correspondence directed to the U.S. Parole Commission (USPC) outlining the release plan and requesting parole certificates, as well as copies of the USPO's letter recommending release plan approval, must be included in the referral package.

b.  <u>Mandatory CCC Residence</u>.  When an inmate must reside in a CCC as a condition of parole, mandatory release, or supervised release supervision after release from confinement, the institution shall refer the case to the appropriate CCM, who shall refer the case for placement under these procedures:

Institutions shall notify the USPC of cases that cannot be placed (see specific information in Attachment B).  Inmates in this category should not be referred for transitional purposes and have this time "stacked" on to the Court or USPC's ordered period of CCC placement.

Inmates releasing from an institution via 3621E CMPL or 4046C CMPL, or who have mandatory CCC residence as a condition of parole, mandatory release, or supervised release supervision, should be referred for release preparation transfer to a CCC, and the CCM should work with U.S. Probation to waive the CCC requirement during the period of supervision.  The CCM shall attempt to affect the 180 day release preparation placement for inmates releasing via 3621E CMPL or 4046C CMPL.  The CCM shall keep the appropriate U.S. Probation Office apprised of the inmate's progress toward reaching the goals of Community Corrections programming.  Should the USPO still require CCC placement as a condition of supervision, the CCM will ordinarily honor the request.

c.  <u>Referral to CCC</u>.  CCMs shall immediately forward referrals to appropriate CCCs.  CCC staff shall notify CCMs in writing of acceptance or rejection.  When referrals are accepted, CCCs will send acceptance letters, subsistence collection agreements, and CCC rules and regulations to inmates in care of their Unit Managers.  Institution staff shall ensure acknowledgment forms are returned to CCCs.  CCMs shall monitor referrals for timely response from contractors.

d.  <u>CCC Rejection</u>.  CCC staff must provide specific reasons, in writing, to CCMs when they reject referrals.  In such cases, CCMs shall determine if further discussion with the CCC staff is appropriate or, if not, referral to an alternate resource is possible.  When all placement options have been exhausted, the CCM shall inform the referring institution Warden, with copies to the Unit Manager, that the inmate cannot be transferred to a CCC and the reason for rejection.

e.  <u>Transfer Date</u>.  When CCMs are notified of an inmate's acceptance by a CCC, a transfer date to the CCC is to be established, and the CCM shall enter the SENTRY destination assignment transaction.  The effective date shall be the approved future transfer date.

Destination assignments, "DST," have been established in SENTRY for contract CCCs and work release programs.  These assignments use the CCM facility code followed by the contract location code. CCMs may add their contract location destination assignments for inmates in any Bureau facility.  When an inmate arrives at the CCC and is admitted to the location (in SENTRY), the destination assignment is automatically removed.

These assignments shall appear on the CCM and institution SENTRY daily log.  Institution staff may display rosters of inmates approved for CCC transfer, and CCMs may display lists of pending arrivals by contract location.

The location description (name of the CCC) shall appear on the inmate's profile.  If, for any reason, an inmate cannot be

transferred to a CCC on the scheduled date, institution staff
shall notify the CCM immediately.

13.  <u>PREPARATION FOR TRANSFER</u>

a.  <u>Trust Fund Account</u>.  No later than **three weeks** prior to the
approved transfer date, unit staff are to determine the amount in
the inmate's trust fund account that may be given to the inmate
at the time of transfer.  A check or draft for the balance (with
the inmate as payee) shall be sent to the CCC immediately.

In accordance with the Program Statement on Telephone
Regulations for Inmates, inmates transferring to CCCs shall be
qualified as "exception" cases during the three-week period prior
to the approved transfer date for purposes of placing collect
telephone calls.

Institution staff should use discretion in giving inmates large
amounts of cash, and if there is reason to question an inmate's
ability to handle money responsibly, the amount may be reduced.

For inmates who have no funds or resources, unit staff shall
determine the extent to which a gratuity is indicated and shall
initiate paperwork, if appropriate (see the Program Statement on
Release Gratuities, Transportation, and Clothing).

If the institution is holding savings bonds for an inmate, or
if an inmate has a savings account at a local bank, the unit
staff is to ensure these financial resources are available at the
release destination when the inmate arrives.

b.  <u>Documentation to CCC</u>.  No later than **two weeks** prior to an
inmate's approved transfer date, institution staff shall forward
the following documents to the CCC:

(1)  Authorized Unescorted Commitments and Transfers (BP-
385), with current photograph;

(2)  Original of the Transfer Order;

(3)  Copy of Furlough Application and Approval Record, with
specific travel method and itinerary;

(4)  Receipt for CCC rules and regulations, if applicable
(this may include the CCC's subsistence agreement form); and,

c.  <u>Clothing</u>.  No later than **one week** prior to an inmate's
approved transfer, staff shall make arrangements for release
clothing.  Suitable release clothing shall be provided as
described in the Program Statement on Release Gratuities,
Transportation, and Clothing.  For non-MINT referrals, at a
minimum, release clothing is to include adequate clothing to

complete a job search and perform work.  Additionally, an outer
garment, seasonally suitable for weather conditions at the
inmate's release destination, shall be provided.

    d.  <u>Medication</u>.  No later than **one week** prior to an inmate's
approved transfer, Health Services staff shall review the
inmate's medical record to determine if the inmate is on
continuous medication.  When an inmate is transferred to a CCC, a
30-day supply of chronic medication shall be provided pursuant to
a new prescription.  If an inmate is prescribed a controlled
substance, assistance from the CCM may be required to determine
if the CCC can accommodate the inmate's special medication needs.
Staff should refer to the Health Services Manual for further
clarification.  CCC staff are to safeguard, store, and dispense
controlled substances in accordance with the terms of their
Bureau contracts.

    e.  <u>Identification</u>.  It is essential that each inmate have some
acceptable form of identification while at a CCC.  Therefore,
during Institution Release Preparation Programs, unit staff shall
assist inmates to acquire social security cards (mandatory) and,
if possible, drivers license, and copies of their birth
certificates.  Additional photo identification may be required if
the inmate is using air transportation.  These items may be given
to an inmate on the transfer date, or mailed to CCCs **prior to**
transfer with the materials described in subsection b. above.

    f.  <u>Community Custody Status</u>.  An inmate must be assigned
"COMMUNITY" custody status prior to transfer to a CCC.  Unit
staff shall state the inmate's current custody status if other
than "COMMUNITY" on the Transfer Order in the Custody
Classification section.  Next to the current custody, unit staff
shall type "Community custody effective on (whatever date the
Warden deems appropriate)."

    g.  <u>Parole Commission Review of Disciplinary Action</u>.  An inmate
who has had a discipline hearing resulting in a Discipline
Hearing Officer finding, after USPC action to establish a
presumptive or effective parole date, may not be transferred to a
CCC until the Commission has considered the disciplinary report
and final action has been taken.

    h.  <u>Sentence Calculation</u>.  The Inmate Systems Manager (ISM) of
the sending institution shall ensure that an inmate's old law
sentence computation is "complete" with all appropriate good time
entered before the inmate departs the institution.

    i.  <u>Final Review of 3621(e) Eligibility</u>.  The decision to grant
an inmate early release is a significant one for the Bureau;
therefore, it is essential that unit staff carefully review
relevant statutory and regulatory criteria before an inmate's
final release under 18 U.S.C. § 3261(e).  Specifically, the Unit

Manager or designee must ensure completion of "Final Review of
3621(e) Eligibility" (Attachment K from the Drug Abuse Programs
Manual), before unescorted transfer to a CCC or release to a
detainer (Drug Abuse Programs Manual, Inmate). Attachment K must
be completed and routed to the Warden. Ordinarily, Attachment K
should be routed to the Warden along with other CCC release
paperwork (i.e., transfer order, furlough application, etc.);
however, a copy of Attachment K is not forwarded to the CCC.

The Drug Abuse Program (DAP) Coordinator and CMC must review
and sign Attachment K prior to the Warden's review. The DAP
Coordinator's review is to ensure that items 5, 7, and 8 are
accurate. Once Attachment K is signed and dated, the Unit
Manager must ensure that a copy is filed in the disclosable
portion of Section 5 (release processing) in the Inmate Central
File. The original Attachment K shall be forwarded to the ISM
for filing in the Judgment and Commitment (J&C) file.

**No inmate shall be released from an institution to a CCC (or
detainer) until the ISM receives the Attachment K with
appropriate signatures.**

j. <u>Education</u>. To assist an inmate in securing employment, the
inmate should have a resume', a copy of his or her education
transcript, GED certificate, and any other education/vocational
training certificates completed during his or her confinement.

k. <u>Exemption from Time Requirements</u>. When transfer dates have
not been established in time for staff to implement the above
procedures within the time requirements, they shall be
accomplished as soon thereafter as possible.

14. <u>TRANSFER AND ARRIVAL NOTIFICATION</u>

a. <u>Transportation Costs</u>. Staff are referred to the Program
Statement on Furloughs for procedures regarding transportation
costs for inmates scheduled for transfer to a CCC.

b. <u>Notification of Travel Schedule</u>. On the date of transfer,
the sending institution's ISM shall notify the CCM via BOPNet
GroupWise of the inmate's departure and travel schedule. A copy
of this notification shall be placed in the inmate's J&C file.
If GroupWise is inoperable, the notification shall be made by
telephone and documented in the J&C file.

c. <u>Arrival Notification</u>. CCC staff shall notify CCMs
immediately when an inmate arrives as a transfer from an
institution. Immediately means:

(1) Upon arrival, if during regular CCM working hours; or

(2) At the first opportunity during regular CCM working

hours if arrival is during evenings, weekends, or holidays.

    d.  <u>Electronic Notification</u>.  By close of the business day following an inmate's scheduled arrival, the CCM shall "admit" the inmate in SENTRY, if the CCC has confirmed the inmate's arrival.  When GroupWise is inoperable, notification of arrival shall be made by telephone to the sending institution's ISM, and the inmate "admitted" in SENTRY at the earliest opportunity.

    e.  <u>Escape</u>.  If an inmate has not arrived at the CCC within a reasonable period after the scheduled arrival time (no later than 24 hours), the CCM shall report the inmate as an escapee.  Then, the ISM at the sending institution must be notified immediately by telephone or GroupWise.

    The ISM at the sending institution is responsible for updating SENTRY to indicate the change in release status from "furlough transfer" to "escape" as of the date the inmate fails to report.  The ISM at the sending institution also shall make the inmate's sentence computation inoperative as of the date following the escape.  Staff at the sending institution shall write an incident report and conduct a UDC/DHO hearing in absentia.  The sending institution shall make all notifications required by the Program Statement on Escapes/Deaths Notification.  The ISM at the sending institution shall also notify the FBI of the inmate escape.  The ISM at the sending institution must also fax a copy of the Notice of Escaped Federal Prisoner (BP-393) to the FBI, U.S. Marshals Service, local law enforcement officials, and law enforcement at the inmate's home of record.  The Inmate Central File is to be retained at the sending institution.

    The CCM shall notify the U.S. Marshals Service in the CCC district.  The CCM shall also notify the Regional Director, the Central Office, and the sending institution via GroupWise of the escape.

    f.  <u>Arrival Confirmation</u>.  The ISM at the sending institution shall use SENTRY to confirm an inmate's arrival at a CCC.  When an inmate's arrival is confirmed, the ISM shall forward the following documents to the CCM by certified mail:

    (1)  Applicable release forms and certificates that have
been completed insofar as is possible by unit staff and reviewed
by ISM;

    (2) Victim/Witness Notification form (BP-323), if
applicable;

    (3)  Completed and current committed fine forms and all
related documentation such as the PSI, if applicable;

    (4) Copies of conditions of supervised release, if
applicable; and

    (5) Appropriate forms and other documentation concerning
final good conduct time awards for an inmate sentenced under the
CCCA.

15.  <u>INMATE CENTRAL FILE</u>.  The Inmate Central File shall be
retained at the institution consistent with provisions
established in the Program Statement on Inmate Central File,
Privacy Folder, and Parole Mini-files.


                              /s/
                         Kathleen Hawk Sawyer
                         Director

PS 7310.04
12/16/98
Attachment A

Sample letter for Wardens to send to Chief USPOs

John Jones, Chief USPO
Judicial District
Street Address
City, State  Zip Code

Re:  Doe, John
Reg. No.:  12345-678

Dear Mr. Jones:

     The above-noted inmate will complete his/her sentence on
_____ and is being considered for referral to a
Community Corrections Center (CCC) on or about _____
for prerelease services.  Because of certain factors in this
offender's case, we are closely reviewing his/her appropriateness
for CCC placement.  Therefore, I am soliciting your view in this
matter recognizing that your office will soon be responsible for
supervising this offender in the community.

     Please indicate below whether or not you favor release
through a CCC for this offender.  Feel free to attach additional
comments.  If you favor release through a CCC, I ask that you
consider providing some assistance in initiating the supervision
process while the offender resides in the CCC.  Please return
this letter as soon as possible so that release planning can be
finalized.

     Thank you for your assistance in this matter of mutual
concern.

                              Sincerely,

                              Warden

          _____    Yes, I favor referral to a CCC for
                              prerelease services.

          _____    No, I do not favor referral to a CCC.

Comments: _____

_____

                         _____
                              Chief USPO
                              District

                         _____
                              Date

PS 7310.04
12/16/98
Attachment B, Page 1

Please refer to the latest issuance of BOPDOCS for a copy of BP-S210.073,
**INSTITUTIONAL REFERRAL FOR CCC PLACEMENT.**

PS 7310.04
12/16/98
Attachment B, Page 2

**INSTRUCTIONS FOR COMPLETION OF INSTITUTIONAL REFERRAL FOR CCC PLACEMENT**

All federal institutions shall use the standard form "Institutional Referral for CCC Placement", BP-210, when referring inmates for community corrections placement in any type of community program.

The following instructions will be followed when completing the form:

**GENERAL INFORMATION:**

♦  Use the current EMS Community Corrections Directory (BOP COMM CORR DIR) or BOPDOCS Community Corrections Directory to determine the appropriate CCM.

♦  All referrals shall be signed by the Warden.

♦  Provide the inmate's full committed name and register number.  The inmate's unit should also be included.

♦  Identification of Unit Manager and GroupWise mailbox codes will expedite notification.

♦  Institution name and mailing address allows CCC staff to send materials directly to the unit manager.

**SPECIFIC INFORMATION:**

1. Indicate the inmate's city of residence upon release.  A complete address should be included in current progress report. Indicate the federal district of supervision.

2.  The ISM shall insure the anticipated release date provided on the referral includes all eligible good time earnings.  The date should be an accurate <u>estimate</u> of the date the inmate is to be released from custody.  If release is by parole, only the parole date needs to be indicated.  At the time of this review, the ISM will insure there are no detainers that would prevent CCC transfer.

3.  Staff specifying a recommended placement date shall further indicate that the CCM should not adjust that date.  (Include this information in Item 12.)  CCMs shall adhere to the recommended date, with any adjustment only being downward due to budget or bedspace constraints as a factor.

PS 7310.04
12/16/98
Attachment B, Page 3

For MINT referrals, staff should provide a specific date of placement, which is normally two months prior to the requested delivery date.  Planned periods of longer than six months require the Regional Director's approval and the Chief U.S. Probation

Officer in the inmate's sentencing district to determine whether the judge concurs with the placement.  (Include this information in Item 12.)

4.  Indicate the date the report was submitted and attach a copy of any transmittal memo to the USPC.

5.  An inmate who has been scheduled for a statutory interim hearing may not be transferred to a CCC until after the hearing or unless the inmate waives the hearing.  If neither is the case, the CCM will hold the referral in abeyance until the matter is resolved.  This information should be included in item 11.

6.  Offenders sentenced under the Sentencing Reform Act or the Anti-Drug Abuse Act may have a term of supervised release following confinement.  Offenders convicted of drug offenses may have a Special Parole Term.

7.  Indicate if the inmate has "aftercare" requirements (must be imposed as a supervision condition by the U.S. Parole Commission, or the sentencing court).  This helps the CCM select the most appropriate facility.

8.  If the inmate is a Central Inmate Monitoring case, the Warden has clearance authority on all CIM cases with the exception of WITSEC cases.  The Inmate Monitoring Section, Central Office will provide CIM clearance for WITSEC cases.

9.  If the area of referral is not the sentencing district, staff will forward release planning materials to the probation office in the proposed district of supervision.  Institution staff should refer to the Operations Memorandum on Release Planning, Inmate - Memorandum of Understanding (MOU) Between the BOP and the Administrative Office of the U.S. Courts for further instructions.  At the time of the unit team's recommendation for CCC placement, the case manager should submit release plans to the USPO if other than the sentencing district.  A relocation acceptance letter should be included in the CCC referral packet. Additionally, for inmates releasing in their sentencing district, a copy of the proposed supervised release plan with the final progress report shall be forwarded to the probation office in the sentencing district for verification of residence and employment.

PS 7310.04
12/16/98
Attachment B, Page 4

10.  The Program Statement on Fines and Costs describes
institution responsibilities for CCC transfers for inmates who
have fines.  If the inmate has a committed fine, include this
information in item 11.

11.  It is extremely important to include any information that
might have a bearing on the facility's decision to accept the
inmate for placement.  Information on outstanding detainers or
pending charges must be included.  Indicate if there is a
substance abuse history.  Also, indicate if the inmate has
successfully completed the institutional phase of the
comprehensive drug treatment program.  If more space is needed,
attach an additional page.

12.  Information on special needs of the individual and/or
unusual circumstances is very important for staff in deciding on
acceptance and setting up an individual program plan once the
inmate is accepted.  If staff wish to recommend a specific
facility or program, they may include that information here.  The
CCM, in managing the CCC population, will consider the referenced
special needs when establishing an acceptance date.  Therefore,
detailed and specific comments in this section are very helpful.
If more space is needed, attach an additional page.  Prenatal
care needs should be addressed also.

Inmates who are _released_ from institutions with a condition of
parole, mandatory release, or supervised release that requires
they reside in a CCC must be referred for CCC placement prior to
their release.  CCMs will notify institutions of acceptance or
rejection.

13.  For MINT referrals, indicate the expected date of delivery.
and the projected date of the inmate's return to the parent
institution.

● **INFORMATION TO BE INCLUDED IN THE CCC REFERRAL PACKET TO CCM:**

A checklist is provided on the referral form to insure that all
necessary material is included.  CCMs who receive referrals
without the required information or documents are instructed to
hold the referral in abeyance until they are able to obtain the
information from the institution.

**Referral Form**
All items shall be completed.  Do not indicate "See progress
report".

PS 7310.04
12/16/98
Attachment B, Page 5

**Current Progress Report**
A current progress report (less than 180 days old at time of referral), including any significant new information that is available since the report was written, must be included with the referral.  Especially important is specific information regarding proposed residence and employment (including telephone numbers), availability of other community resources, and any other information regarding release plans.

**Presentence Investigation/Violation Report**
Two copies of all relevant presentence investigation/violation report(s).

**Community Based Program Agreement**
This form allows facility staff to discuss the referral with family, potential employers, and other community resources and notifies the inmate of any special conditions of CCC residence such as financial responsibility and urinalysis.  This form also acknowledges the inmate's agreement to comply with the rules and regulations of the Home Confinement program and stipulates that participation in home confinement may be an alternative to placement in a Community Corrections Center.  Additionally, for MINT referrals, it notifies the inmate or the guardian/foster care provider of their responsibility for medical care and subsistence of the child while in a community based program.

**BP-339 CIM Case Information Summary**
This document is required for all CIM assignments except for "pure" separation cases.

**USPO Acceptance Letter**
If an inmate is releasing to a district other than the sentencing district, a relocation acceptance letter from the appropriate USPO must be included in the referral packet.

**Copy of Latest Parole Commission Notice of Action**
Provide the most current copy which includes specific action, such as the presumptive parole date, effective parole date, continue to expiration, etc.

**BP-351 Medical Evaluation for Transfer of Inmates to CCC Type Facility**
Must be completed prior to the referral in order to advise the facility of potential problems or special medical needs.

PS 7310.04
12/16/98
Attachment B, Page 6

## Judgment and Commitment Order

Serves as documentation of authority to maintain custody and identifies special commitment conditions.  If necessary, this document can be provided to the U.S. Marshals Service for purposes of apprehension or maintaining custody.

## Statement of Responsibility (MINT Referrals)

For MINT referrals, this serves to notify the CCM, CCC, and institution staff of who will assume custody and total financial responsibility for the child.

## •INFORMATION TO BE FORWARDED TO THE TRANSITIONAL SERVICES MANAGER:

Information should be forwarded to the TSM in the region where the inmate is releasing.  Staff are to refer to the Drug Abuse

Programs Manual, Inmate for additional information for responsibilities/documentation.

## Treatment Summary and Referral Form - Drug Abuse Treatment Programs

This form provides assessment findings, treatment progress and other pertinent information for inmates who are graduates of Residential Drug Abuse Programs.

## Agreement to Participate in Community Transition Programming

By signing this form, the inmate acknowledges that he/she understands and agrees to comply with program rules and regulations of the Bureau's community-based drug programs.

## Progress Report

Refer to summary provided in "Current Progress Report" for INFORMATION TO BE INCLUDED IN THE CCC REFERRAL PACKET TO CCM.

## Referral Form

Refer to summary provided in "Referral Form" for INFORMATION TO BE INCLUDED IN THE CCC REFERRAL PACKET TO CCM.

## OTHER INFORMATION

Any information or documents believed to be necessary to assist in the pre-release planning process.  A current psychological report should be included if it is anticipated the inmate will have mental health needs.

PS 7310.04
12/16/98
Attachment B, Page 7

Correspondence from/to family, friends, prospective employers,
probation officers, etc., that may provide specific information
about release plans and resources.  A copy of the referral form
is sent to the CUSPO in the sentencing district and the district
of supervision.  Other pertinent documents will have already been
sent by the institution to these offices.

<u>Procedures</u>

For inmates being referred to contract facilities, the CCM
will forward the referral to the appropriate facility, with
instructions for the facility director to reply to the CCM with a
copy to the referring institution.  In addition to the transfer
date, the facilities letter of acceptance will usually include
documents for the inmate to sign and return prior to transfer.
Such documents should be returned to the CCC by institution staff
with the BP-385(51), transfer order and furlough papers.

The CCM maintains a copy of the referral for reference, should
any questions arise from the facility, USPO, inmate's family or
the institution.

Using institution records, unit staff will complete as much
information as they can on release paperwork.  Only the
"unknowns" which must be determined while the inmate is in the
CCC will be left blank.  Inmates do not sign release papers
(acknowledging they understand supervision conditions) and
institution staff do not sign "certifying release" prior to an
inmate's transfer.  These certifications are done by CCC staff at
the time of an inmate's release.

The institution is responsible for typing all information on
release certificates.  The line "now confined in the" shall
specify the name of the CCC from which the inmate is to be
released.

The inmate should sign the space at the bottom of the release
certificate indicating an understanding of the conditions of
release before departure from the CCC.  The CCC Director is to
sign the bottom portion of the form as the Chief Executive
Officer verifying the inmate's release.

PS 7310.04
12/16/98
Attachment C

Please refer to the latest issuance of BOPDOCS for a copy of BP-S434.073
**COMMUNITY BASED PROGRAM AGREEMENT.**

PS 7310.04
12/16/98
Attachment D

Sample Statement of Responsibility for MINT Referral

Name
Address
City, State   Zipcode

RE:   DOE, Jane
      12345-678

Dear _____:

     Jane Doe, an inmate currently confined at the Federal
Correctional Institution, _____(city_____, ___(state)___ , has been
accepted into the Mothers and Infants Together (MINT) Program and
is tentatively scheduled to furlough transfer to ___(name of
facility)____, ____(address)___, on _____.  She has an
anticipated delivery date of _____.

     Ms. Doe advises that you, the father of the baby, will
assume custody of the child, to include financial responsibility
for medical care costs upon her release from the MINT Program.
She indicated that your telephone number is _____.

     Accordingly, by signing this letter, you agree to assume
custody of the child, including financial responsibility for
medical care costs once Ms. Doe is released from the MINT
Program.

     Please return this letter to the inmate's case manager,
_____.  If there are any questions or concerns, please do
not hesitate to contact me at __(full phone number)__ .

                         Sincerely,




                         XXXXX
                         Unit Manager


_____         _____
Signature of person assuming care and financial     Date
responsibility for Ms. Doe's baby / relationship
to inmate



cc:   CCM
      CCC
      HSA
      Controller
      Central File